# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

Chicago District Council of )
Carpenters Pension Fund, et al., )
)
    Plaintiffs, )
)
    v. )    No. 03 C 6990
)
Roof Right Roofing and Insulating Co., )
)
    Defendant. )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

Defendant Roof Right Roofing and Insulating Co. ("Roof Right")

entered into an agreement in October of 1998 whereby Roof Right agreed to be

bound by a collective bargaining agreement. Under the provisions of the CBA, Roof

Right is required to make contributions to certain trust funds based upon the hours

worked for certain employees. Plaintiffs initiated an audit of Roof Right for the

period of January of 2000 through December of 2002. The parties in this action all

agree that Roof Right is liable to Plaintiffs for that period in the amount of

$48,845.64. Roof Right disputes any further liability and seeks an offset for the

alleged improper allocation of funds provided by Roof Right as part of Roof Right's

bankruptcy proceedings. Roof Right brought the instant action alleging violations of Section 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*, 29 U.S.C. § 1132, and Section 185 of the Taft-Hartley Act, 29 U.S.C. § 185. A bench trial was conducted in this action on February 1, 2005. We have reviewed all admissible evidence in this case and enter the following findings:

## FINDINGS OF FACT

I. Parties and Agreements

1.    Plaintiffs Chicago District Council of Carpenters Pension Fund, the Chicago District Council of Carpenters Welfare Fund and the Chicago and Northeast Illinois District Council of Carpenters Apprentice and Trainee Program ("Trust Funds") receive contributions from numerous employers pursuant to collective bargaining agreements between the employers and the Chicago and Northeast Illinois District Council of Carpenters, successor of the Chicago District Council of Carpenters, ("Union"), and therefore, are multi-employer plans.

2. The Trust Funds are administered at 12 East Erie, Chicago, Illinois.

3. Roof Right is an employer engaged in an industry affecting commerce and is a residential contractor that performs the installation of roofing, insulation and sheet metal. The parties in this action have stipulated that Advance Roofing, Inc. is the alter ego of Roof Right.

4. On October 13, 1998, Roof Right entered into an Agreement whereby it agreed to be bound by collective bargaining agreements or agreements whose terms require Roof Right to pay fringe benefits to the Trust Funds.

5. The Agreement and the collective bargaining agreements also bind Roof Right to the provisions of the Agreement and Declarations of Trust that created the Trust Funds ("Trust Agreements").

6. The Agreement and the collective bargaining agreements also bind Roof Right to the provisions of the Agreement and Declarations of Trust that created the Trust Funds.

7. Roof Right is required to make contributions to the Trust Funds for each hour

3

worked by its carpenter employees at the rate and in the manner specified in the collective bargaining agreements and Trust Agreements. In addition, Roof Right is required to make contributions to the Trust Funds measured by the hours worked by subcontractors engaged in carpentry work and that are not signatories to a collective bargaining agreement with the Union.

8.      Pursuant to the provisions of the Trust Agreements and the collective bargaining agreements, Roof Right is required to provide access to the records necessary for the Trust Funds to determine whether there has been compliance with the obligation to contribute to the Trust Funds.

9.      The Carpenters Union negotiates a master commercial collective bargaining agreement.

10.     The short form agreement signed by Roof Right binds Roof Right to the master commercial and residential agreements.

11.     As the actual work performed by Roof Right is residential in nature, Roof Right worked under the terms of the master residential agreement.

12. Article I of the Collective Bargaining Agreement in the Residential Agreement for Cook, Lake and DuPage Counties ("Article I") defines the bargaining unit of carpenters as follows:

> The Bargaining Unit shall consist of all Journeymen, Foremen, Apprentices and Trainees engaged in work at the construction site covered by the occupational jurisdiction of the "UNION", including, but not limited to, the milling, fashioning, joining, assembling, erection, fastening or dismantling of all material of wood, plastic, metal, fiber, cork and composition, and all other substitute materials; the handling, erecting, installing and dismantling of machinery and equipment, hydraulic jacking and raising, and the manufacturing of all materials where the skill, knowledge and training of the Employees are required, either through the operation of machine or hand tools. The Bargaining Unit shall also consist of all Journeymen, Foremen, Apprentices and Trainees engaged in work as Carpenters and Joiners, Millwrights, Pile Drivers; Bridge Dock and Wharf Carpenters, Divers, Underpinners and Timbermen and Core Drillers; Ship Wrights, Boat Builders and Ship Carpenters, Joiners and Caulkers, Cabinet Makers, Bench Hands, Stair Builders, Millmen, Wood and Resilient Floor Layers and Finishers; Carpet Layers, Shinglers, Siders, Insulators, Acoustic and Dry Wall Applicators; Shorers and House Movers; Loggers, Lumber and Sawmill Workers; Casket and Coffin Makers; Furniture Workers, Reed and Rattan Workers; Shingle Weavers, Box Makers, Railroad Carpenters and Car Buildings and Show, Display and Exhibition Workers and Lathers, regardless of material used; and all those engaged in the operation of wood working or the machinery required in the fashioning, milling or manufacturing of products used in the trade, *or engaged as helpers to any of the above divisions or sub-divisions, and the handling, erecting and installing material on any of the above divisions or sub-divisions*; burning, welding, rigging and the use of any instrument or tool for layout work, incidental to the grade. When the term "Carpenter and Joiner" is used, it shall mean all the sub-divisions of the Trade. However, the Union agrees that it will not interfere with existing practices of other unions affiliated with the Building Trades.

5

(Art. I)(emphasis added).

## II. The Audit of Roof Right

13.　The accounting firm of James, Egan & Associates ("Auditor") conducted an audit of Roof Right ("Audit") for the period 2000-2002 ("audit period").

14.　No Auditor employee interviewed any Roof Right employee named in the Audit. Nor did any Auditor employee observe any Roof Right employee's work or interview the employee's supervisor.

15.　The evidence at trial showed that the Audit was based upon a series of presumptions made by the Auditor that resulted in conclusions in the Audit that did not necessarily have any correlation with reality. Specifically, the presumptions made by the Auditor caused certain employees to be presumed to be engaged in activities that fell within the scope of Article I, despite the lack of sufficient evidence to support such conclusions.

16.　Pursuant to a stipulation of the parties in this action, 556.75 hours for January

of 2000 are removed from the audit, reflecting wage payments reissued by Roof Right for payroll checks originally issued prior to 2000. This reduces the Audit amount by $4,025.30. (Stip. 2).

17. Pursuant to a stipulation of the parties in this action, Roof Right is liable to Plaintiffs for at least $48,845.64 in fringe benefit contributions, as stipulated, for the failure to report 6,127.34 hours. (Stip. 4).

## IV. Roof Right Employees that were Members of Roofers' Union

18. During the period of 2000 to 2002, Roof Right was bound under a collective bargaining agreement ("Local 11 CBA") with United Union of Roofers, Waterproofers, and Allied Workers, Local 11 (or "Local 11, Roofers' Union"), and during that period Roof Right employed individuals who were members of Local 11, Roofers' Union ("Local 11"). Those employees performed shingling for Roof Right. The Local 11 CBA claims a wide range of roofing work.

19. There was insufficient evidence to conclude that Roof Right made

7

contribution payments to Local 11 for the following employees: Alfonso Barrera, Efren Cabrera, Rafael Capistran, Oscar Contreras, Matthew Fawkes, Rutilo Garcia, Octavio Gonzales, Guillermo Guerrero, Abdon Herrera, and Benjamin Zyla. Also, the CBA requires contributions to the Trust Funds for all work covered by the CBA without regard to union membership.

20.     The Auditor correctly found that Roof Right owed contributions for the employees referred to in fact number 19.

## V. Sheet Metal Workers

21.     During the audit period, Roof Right employed individuals whose job duties entailed working with sheet metal. Roof Right did not report these employees' hours to the Funds during the audit period.

22.     The work of the employees referred to in fact number 21 included the fabrication of sheet metal, installation of flashing, installation of sheet metal pans in roof areas that could not be shingled, installation of copper bay windows, installation of base flashing, and the installation of new counter

flashing to brick and around chimneys. This work was performed after carpenters had left the job site.

23. Some of the work performed by the employees referred to in fact number 21, such as basic counter flashing and apron flashing from roof to wall, can typically be performed after as little as a month's training.

24. The employees referred to in fact number 21 that were included in the Audit were the following: Brian Berner, Paul Boron, William Bridgewater, Ricardo Cabajal, James E Castro, Ardean Christian, Juan Contreras, Louis Hernandez, James Klenick, Michael Kurczewski, Alejandro Lopez-Hernandez, Mark McCourt, Noe Mercado, Freddie L Roberts, Donald Siemion, Titus P. Spikes, Claudio Suarez, Shane Swanson, Benjamin Thomann, Edgar Trujillo, and Leroy Williams. The Auditor erroneously indicated that Roof Right owed contributions for those employees.

## VI. Laborers

25. During the audit period, Roof Right employed individuals who were classified

as laborers.  Plaintiffs did not proffer sufficient evidence to show that the

laborers performed activities within the scope of Article I.  The Auditor

erroneously included in the Audit the following employees who were

classified as laborers:  Mario Bautista, Joaquin Blasco, Javier Castrejon,

Humberto Garcia, Ed Kalinski, Oscar Lopez, Chuck Michaels, Jorge Puig,

Fidencio Rodriguez, Jr., and Bartalome Ruiz.


## VII. Gutter Installations


26.    During the audit period, Roof Right employed individuals who performed no

        carpentry work, but instead installed gutters and downspouts.  Those

        employees fabricated gutters using a gutter machine and installed them on

        customers' houses, along with downspouts.  The duties of the employees also

        included the loading, operation, and/or unloading of trucks carrying gutters

        and downspouts to job sites.


27.    The Auditor erroneously included in the Audit the following employees who

        performed gutter work:  Marco Aguilar, Richard Delano, Nicholas

        Economakos, David Garcia, Jim Krzykowski, Kevin Moe, Christopher

Moroney, Jimmy Ramos, Stan Rygula, Justin Lee Schabes, James Stricklin , Victor Touchet, and Tim Wulf.

## VIII. Insulation and Roof Stockers

28.    During the audit period, Roof Right employed individuals classified as insulation stockers.  Those employees performed no carpentry work, but instead operated trucks loaded with insulation materials, and transported the insulation materials to job sites.  The insulation stockers typically required limited training before they could begin performing their tasks.  The Auditor erroneously included in the Audit the following insulation stockers: Sebastian Bentacour and Jose A. Rodriguez.

29.    During the audit period, Roof Right employed individuals it classified as roof stockers.  Those employees performed no carpentry work, but instead traveled to and from job sites with the use of a "lowboy."  The stockers also operated and maintained a Pettibone which is a ten ton forklift with a telescopic boom. The stockers stocked roofs with roofing materials by dropping materials off, or delivering them to the roof area at the job site.  The stockers did not work

alongside the carpenters.

30. The following employees referred to in fact number 30 were employed by
Roof Right and were included in the Audit: Elio Contreras, Brian Elias,
Guillermo Niteo, Javier Niteo, Jose Nieto, Alvaro Renteria, Pablo Renteria,
and James Wyma. The Auditor erroneously included those employees in the
Audit.

## IX. Warehouse Workers

31. During the audit period, Roof Right employed Fidel Andrade ("Andrade") and
Jorge Lagunas ("Lagunas") as warehouse workers. The duties of the
warehouse workers were cleaning up the warehouse, organizing insulation
and shingle supplies, washing trucks, and general clean-up. Although neither
employee did carpentry work, their hours were included in the Audit. The
Auditor therefore erroneously included Andrade and Lagunas in the Audit.

## X. Salesman Position

12

32.     Martin Moody ("Moody") was included in the Audit although he was a

        salesman who performed estimates and prepared proposals.  Plaintiffs

        proffered no evidence that he performed tasks that fall within the scope of

        Article I.  The Auditor erroneously included Moody in the Audit.


## XI. Prior Carpenter Work and Comparable Wage Presumptions


33.     The Auditor  presumed that certain employees of Roof Right were carpenters

        simply because they made wages comparable to other employees who were

        carpenters.  The hours for such employees were coded in the Audit as 107,

        107D, 107Q, 507A or 507Q.  The Auditor therefore erroneously included the

        following employees in the Audit: Marco Aguilar, Fidel Andrade, Brian

        Berner, Paul Boron, Ricardo Cabajal, James E. Castro, Arnold Contreras, Elio

        Contreras, Modesto Coronel, Nicholas Economakos, Alfonso Garcia, David

        Garcia, Humberto C. Garcia, Louis Hernandez, James Klenick, Jim

        Krzykowski, Michael Kurczewski, Alejandro Lopez-Hernandez, Noe

        Mercado, Kevin Moe, Christopher Moroney, Jimmy Ramos, Pablo Renteria ,

        Freddie L. Roberts, Fidencio Rodriguez, Jr., Jorge Ruiz, Justin Lee Schabes ,

        Titus P. Spikes, James Stricklin, Claudio Suarez, Shane Swanson, Benjamin

13

Thomann, Victor Toucet, Edgar Trujillo, Alfanso Vargas, Leroy Williams , Tim Wulf.

34. The Auditor also presumed that certain employees that were reported by Roof Right as carpenters during the audit period were also performing work for Roof Right as carpenters prior to the time that Roof Right reported the employees as carpenters.  The Auditor therefore erroneously included the following employees in the Audit: James W. Castiglione, Javier Castrejon, Cesar Guerrero, Mario Guerrero, Raul Guerrero, Arturo Hernandez, Andres Huesca, Emanuel Jimenez, Benjamin Sanchez.

## WITNESS TESTIMONY

Overall, Plaintiffs' witnesses appeared uncertain regarding their answers and their manner on the witness stand showed that they lacked knowledge regarding key facts in this matter.  On the other hand, Roof Right's witnesses all appeared to be knowledgeable and credible.  We shall provide a few specific comments below regarding certain witnesses.

Plaintiffs called as an expert witness Deena Rice ("Rice"), who is an accountant that is employed by the Auditor as an audit manager.  Rice indicated that

she prepared a compliance report based upon the Audit. Although Rice initially presented herself as a witness that had a thorough knowledge of the facts in this action, it became clear on cross examination, based upon the content of Rice's responses and her mannerisms on the stand, that Rice lacked specific knowledge regarding key information in this action. Although Rice could verify that the calculations of the numbers in the Audit were accurate, she clearly showed on the stand that she did not comprehend the underlying bases utilized in arriving at those numbers or the ultimate meaning of the numbers. It was clear from Rice's responses and her demeanor that the Audit was conducted merely by regurgitating the numbers that were spoon fed to the Auditor by Plaintiffs. Rice was little more than a mouthpiece for Plaintiffs.

Plaintiffs also called as a witness Jim Rosemeyer ("Rosemeyer"). Rosemeyer's testimony lacked credibility. On the stand, Rosemeyer appeared confused and uncertain regarding several issues. For example, Rosemeyer showed on the stand that he lacked sufficient understanding regarding the applicability of the special L criterion for the Audit. Also, when Rosemeyer was asked what information was taken into consideration before an employee was deemed a carpenter using the "comparable wage" presumption, Rosemeyer did not know the answer. Rosemeyer also repeatedly relied upon Article I of the CBA for his

positions, yet his manner when testifying indicated a lack of comprehension of the exact meaning or content of Article I. Rosemeyer was also asked on cross examination whether Plaintiffs would have altered their position in regards to the contributions sought for certain employees if Roof Right had submitted documentation indicating that such employees did not perform bargaining work. Rosemeyer evasively responded that he would review it and, if he saw fit, he definitely would have discussions about that. Rosemeyer's response, even to the extent that it was not evasive and could be deemed a definitive statement, was not made in a credible manner on the stand. Rosemeyer was asked on redirect whether Roof Right submitted documentation to Plaintiffs regarding employees that were included in the Audit under the "comparable wages" presumption, but should not have been included since they did not perform activities that are covered under Article I. Rosemeyer responded in a cursory manner that no such documents were submitted by Roof Right, but Rosemeyer's mannerisms during his response indicated that he was far from certain on that point and his response was not credible. On recross, Rosemeyer also indicated his complete ignorance relating to a document referred to by Roof Right's counsel regarding the comparable wage presumption. Rosemeyer's testimony illustrated the fact that Plaintiffs' entire case is based upon premises regarding the CBA that were never thoroughly thought out

nor understood by Plaintiffs. The conclusions of Rosemeyer are not supported by the facts and evidence in this case.

Plaintiffs also called as a witness Donald Zerth ("Zerth"). Zerth was particularly credible on cross examination when he explained his understanding of the types of work performed by certain Roof Right employees. However, his testimony was not of any particular benefit to Plaintiffs' case.

Roof Right called as a witness Charles Zalewski ("Zalewski"). Zalewski was extremely credible and appeared to be knowledgeable on all topics that he testified to while on the stand.

## CONCLUSIONS OF LAW

1. This action arises under Section 502 of ERISA and Section 301 of the Taft-Hartley Act (29 U.S.C. §§1132 and 185) and this court has jurisdiction in the instant action pursuant to 28 U.S.C. § 1331.

2. The Northern District of Illinois is a proper venue for the instant action. 28 U.S.C. § 1391.

3.      Pursuant to Section 515 of ERISA, "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145.

4.      Labor agreements cover entire bargaining units. *Moriarty v. Larry G. Lewis Funeral Directors Ltd.*, 150 F.3d 773, 776 (7th Cir. 1998). The coverage of such agreements is not limited to union members, "and union membership plays no role in the administration of multi-employer pension and welfare funds under ERISA." *Id.*

5.      A court must "enforce the terms of a collective bargaining agreement if those terms are unambiguous." *Mazzei v. Rock N Around Trucking, Inc.*, 246 F.3d 956, 960 (7th Cir. 2001)(stating that a "CBA is unambiguous if it 'is susceptible to only one reasonable interpretation.'"). If there is "no ambiguity in the terms of the CBA, then, in determining its meaning as a matter of law, [the court] need not review extrinsic evidence suggesting how those terms should be interpreted." *Id.*; *see also Dugan v. R.J. Corman R.*

*Co.*, 344 F.3d 662, 665 (7th Cir. 2003)(stating that a court may not consider extrinsic evidence when interpreting a collective bargaining agreement if the agreement was "clear as written.").

6.  Only the hours of Roof Right employees engaged as helpers to carpenters, where the helpers' work consisted of carpentry work, were covered by this Audit. We note that Plaintiffs cite to a decision in another case made by the United States District Court for the Northern District of Illinois that interpreted the "helpers" language in Article I. (RPCL Par. 16). However, such a ruling is not controlling precedent. The only reasonable interpretation of the definition of the term "helpers" in Article 1 is that the term refers to a person who works along with the carpenter, helping the carpenter to perform his or her carpentry work. Since the individual is merely a helper, the individual need not perform carpentry work himself, but the assistance offered must have a direct connection to the carpentry work. The concept of "helpers" can be carried too far, which is exactly what Plaintiffs ask the court to do. It is not logical to conclude that every individual that "helps" a carpenter should be a member of the bargaining unit of the Chicago and Northeast Illinois District Council of Carpenters.

Laborers that clean up a work site after a carpenter leaves the site "help" a carpenter in an indirect way, but not with his carpentry work. Employees that bring carpentry supplies to a work site "help" a carpenter, but do not really help a carpenter in the performance of his carpentry tasks. Plaintiffs argued at trial that without the assistance of the employees that bring the supplies to the work site, the carpenter could not perform his job. However, under this theory, every Roof Right employee that helped to facilitate Roof Right's construction contracts in any manner would be part of the bargaining unit of the Chicago and Northeast Illinois District Council of Carpenters, since without work contracts, there would be no work for the Roof Right carpenters to perform. Under Plaintiffs' expansive interpretation of the term "helpers," if a dispatcher contacts a carpenter on his cell phone at the job site, while the carpenter is working, the dispatcher becomes a "helper" of a carpenter under Article I. However, common sense tells one that the dispatcher is not a carpenter or a "helper" of the carpenter in any meaningful sense. Plaintiffs' position fails to consider the surrounding facts. Plaintiffs' position regarding the term "helpers" illustrates how Plaintiffs mechanically digested numbers and statistics in determining the contributions owed by Roof Right under the Audit simply to maximize the funds that could be collected

from Roof Right rather than engaging in any meaningful examination of the facts at hand.

7.    Only the hours of Roof Right employees who were engaged in the "handling, erecting, *and* installing" of material, as described in Article I, were covered by the Audit. (Art. I)(emphasis added). Work that involved the mere handling of material, without any erecting and installing, falls outside the scope of Article I. Plaintiffs argue that any employee that comes into contact with or handles certain materials is a carpenter. However, Plaintiffs' interpretation of Article I is too expansive. Common sense indicates that the mere fact that an individual handled or came into contact with certain materials should not mean that the individual engaged in carpentry work that is covered under Article I. Plaintiffs ask the court to adopt a completely unreasonable interpretation of Article 1 that would provide Plaintiffs with a virtually unlimited ability to seek contributions from all types of Roof Right employees. Under Plaintiffs' interpretation of Article I in this regard, a secretary at the Roof Right offices that puts paper in a copy machine engages in the "handling" of a wood product and could arguably be deemed a part of the bargaining unit. Yet, common sense tells us that the secretary is not

engaging in work that is remotely related to that of a carpenter.

8. Plaintiffs failed to meet their burden of proof as to the following classifications of employees: a) those classified as sheet metal workers and gutter and downspout workers; b) those classified as laborers; c) those classified as warehouse workers; d) those classified as insulation stockers and roofing stockers; e) those who work as salesmen; f) those whose wages were comparable to carpenters; and g) those whose hours were reported at a point in time subsequent to hours worked but not reported. Plaintiffs met their burden of proof as to the Roof Right employees for whom Roof Right claimed to have made contributions to Local 11.

9. A court may draw an adverse inference from a witness' invocation of his or her Fifth Amendment privilege against self-incrimination in a civil action, but a court may not make a finding based solely upon such a witness' silence. *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 391 (7th Cir. 1995) ("[s]ilence is a relevant factor to be considered in light of the proffered evidence, but the direct inference of guilt from silence is forbidden.").

10.      Roof Right is in violation of its contractual obligations to plaintiffs by virtue

of inaccurate reporting during the years of 2000 through 2002 and Roof Right

is liable to plaintiffs for at least $48,845.64 in fringe benefit contributions, as

stipulated, for the failure to report 6,127.34 hours.

## I. Hours of Contributions

We cannot determine at this juncture the precise amount of contributions

owed by Roof Right because both parties have failed to provide the court with the

necessary information. Roof Right did not address at trial the precise number of

hours at issue for each employee. In Roof Right's proposed findings of fact, Roof

Right has listed the hours for employees that Roof Right contends should not have

been included in the Audit. However, Roof Right failed to adequately explain to the

court the bases for the listed hours. The exhibits referred to by Roof Right in

support of its hourly calculations reflect a different number of hours for many of the

employees. Also, it is not self evident simply by viewing the exhibits as to whether

all or only portions of the hours of the employees fell outside the scope of Article I

and whether or not some of the hours for those employees has already been removed

from the Audit as part of the parties' stipulations. Plaintiffs have likewise been

derelict in providing the court with the information necessary to make a

23

determination on this issue. Regardless of whether or not Plaintiffs believed that the court would find that the above referenced categories of employees should be included in the Audit, the hours at issue were still relevant facts that should have been addressed at trial and should have been addressed in Plaintiffs' proposed findings of fact. Therefore, we shall give Roof Right until July 11, 2005, to file a brief delineating the hours of employees that should be excluded from the Audit and the contributions owed by Roof Right taking into consideration the above rulings. The brief should also provide a thorough explanation for the bases of the calculation of the hours and all necessary supporting documentation. Plaintiffs' response brief is due on July 21, 2005.

## II. Offset

Roof Right has also asserted that it is entitled to an offset of $116,168.82. The parties have stipulated that on July 19, 2000, in bankruptcy Case 99 B 33714, In re: Roof Right Roofing & Insulation Co., Inc., the bankruptcy judge issued an order, entitled "Order Authorizing Debtor-in-Possession to Obtain Financing and Pay off Secured Debt," which stated in part he following:

> [T]he Debtor, after paying Old Kent Bank an amount sufficient to obtain full and complete releases of the Debtor, is authorized to segregate and pay, on behalf of the Chicago District Council of Carpenter's Fringe Benefit Trust Funds ("Carpenter's Trust Funds"),

the sum of $315,000 *to be credited toward payment of administrative and priority expense claims*, as allowed by this Court, which were filed by the Carpenter's Union in this proceeding. The Debtor reserves the right to object to the balance of said claims, but, on or before July 14, 2000, will make immediate payment to the Carpenter's Union in the aforesaid amount on account of said claims in settlement of objections raised by the Carpenter's Union to the SBC financing.

(Stip 3, Att 1)(emphasis added). The parties also stipulated that, pursuant to the

bankruptcy judge's order, Roof Right disbursed the $315,000 to Plaintiffs in

September of 2000, that the Funds described the allocation of this money as

"accounting post petition payments," and that of this amount, Plaintiffs allocated

$116,168.82 to the contribution month of January of 1997. (Stip. 3 Att.2). Roof

Right did not file a counterclaim in the instant action and has not presented sufficient

evidence to show that an offset is warranted. We are not finding that Roof Right is

not entitled to the $116,168.82 that it seeks in the offset request. We simply find

that based upon the evidence before us, Roof Right has not shown that it is entitled

to an offset.

# CONCLUSION

Based on the foregoing analysis, we find that Plaintiffs failed to meet their burden of proof as to the following classifications of employees: a) those classified as sheet metal workers and gutter and downspout workers; b) those classified as laborers; c) those classified as warehouse workers; d) those classified as insulation stockers and roofing stockers; e) those who work as salesmen; f) those whose wages were comparable to carpenters; and g) those whose hours were reported at a point in time subsequent to hours worked but not reported. Plaintiffs met their burden of proof as to the Roof Right employees for whom Roof Right claimed to have made contributions to Local 11.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: June 24, 2005